FILED
9/18/26 11:57 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| In re: | : | Case No.: | 26-21367-GLT |
| | : | Chapter: | 13 |
| Nicole Anne Frankhouser | : | | |
| | : | | |
| | : | Date: | 9/16/2026 |
| *Debtor(s).* | : | Time: | 03:30 |

## PROCEEDING MEMO

-

***MATTER:*** #27 - Objection to Debtor's Claim of Exemptions Filed by Trustee
# 30 - Certificate of No Objection

***APPEARANCES:***

| | |
|---|---|
| Debtor: | Chad T Van Horn, Stephanie Roache, Patricia Reick, Edward Reick, Jr. |
| Trustee: | James Warmbrodt, Ronda Winnecour |
| UST: | Marta Villacorta |
| Posisble Counsel for Debtor: | Glenn Bartifay, Salene Mazur Kraemar |

[4:32]
***NOTES:***

Court: We will start with the trustee's objection to the Debtor's exemptions.

Warmbrodt: All of these objections to exemptions were filed in cases that came up around the same time. In filing these objections and referencing the other cases, the trustee did so because of the concern that debtors are not being adequately represented by counsel. The exemptions being filed exceed the statutory limitation. In three of the four cases, we have two motions to dismiss and in a third case, a case is in a posture to be dismissed and only one of them appears to be moving forward. The Debtors are learning information about their case that wasn't adequately communicated. The trustee is concerned about the filing of these motions to dismiss and the failure to make payments. In the Reick case, this was filed as a 100% plan. The income for the Debtors as listed in Schedules I and J seemed sufficient. So why are motions to dismiss being filed? In the Schilling case, the Debtors didn't appear for the 341 meeting. The value was scheduled at $133,500 and zillow estimates were estimated in excess of $300,000. The amount paid to purchase was $143,900. The trustee brought that to the attention of Debtor's counsel. The Filipovic case is also a 100% plan, and the amount of the exemption that is claimed under (d)(1) was half of the fair market value. The unsecured claims that were filed were half of what was scheduled. Schedules I and J again indicate that the plan should be feasible.

Court: Mr. Van Horn, these Debtors claimed federal exemptions, yet claimed them in excess of the statutory limits. What is the explanation for that?

Van Horn: In the cases where Debtors wanted to amend and move forward, we amended Schedule C.

Court: Why were these exemptions taken in these amounts?

Van Horn: It was a software issue that has since been fixed. We were communicating with the chapter 13 trustee's office to close out matters and move forward.

Court: When you are saying that you are referring them out, what does that mean?

Van Horn: We are offering them a refund or referring them to Ms. Mazur-Kraemar's office. We have been winding down the Pittsburgh practice. We are going to continue filing chapter 7s, but we are trying to transfer the 13s as quickly as possible.

Court: You're not filing any more 13s?

Van Horn: We have one case that is prepared. We have seven other chapter 13s that have been confirmed and we are looking to do a substitution of counsel. We have two pending dismissal today. We have three other matters that if payments are made, that are confirmable. We are going to substitue out of ten cases and then these two pending dismissal.

Court: What is your time frame on the chapter 7s?

Van Horn: We sent out an email, and by the end of the year, we should be able to wind down those cases.

Court: How many chapter 7s do you have right now that are active?

Van Horn: There are five total chapter 13 matters that are not yet confirmed. Three of which are up today. For chapter 7s, I would guess five to seven are pending.

Court: What is your anticipation of what's in the pipeline?

Van Horn: We have 10-15.

Court: Who was reviewing these cases to look at the exemptions?

Van Horn: All of these issues unfortunately happened during the same period. We have made the determination not to move forward to them.

Court: Are you prepared and willing to enter into a consent agreement about not filing chapter 13s and chapter 7s?

Van Horn: I would rather not. I will not file any more chapter 13s.

Court: I have not seen errors like this before throughout my time on the bench.

Van Horn: I regret that these mistakes were made. We filed motions to dismiss in these cases.

Court: It seems like you're trying to sweep things under the rug. You have suggested that this is a computer issue, not a human issue.

Van Horn: It was a computer issue, but I understand your concern. We will be ending our office here.

Court: If you are no longer going to be practicing here, that negates my inquiry in a lot of other areas then.

Van Horn: There is a disconnect here between the SOFA and the 2016 statements.

Court: It seems there's a $200 difference between what was received and what is reported as fees. You're telling me that represents out-of-pocket costs advanced?

Van Horn: We are charged per case. The software we use is Glade.

Court: What is the reason that we are looking at a dismissal in the Reick case then?

Warmbrodt: There were some expenses that we would typically object to, but for it being a 100% plan.

Reick: I had a gambling addiction for six months. My anticipation is that I will work for the next eight years. After the 341, I was dreading what was going to come next because they said it was going to end up being a $7,000 payment.

Court: So you have returned the fees that were paid by the Reick's in this case?

Van Horn: Yes.

Warmbrodt: There was a payment of $2,491.15 to Van Horn Law Group. What we had in August was distributed.

Van Horn: The largest creditor in the Schilling case is the IRS. He was happy with our representation.

Roache: The lottery ticket is for $200,000.

Winnecour: Who are we supposed to be paying in those four cases now?

Van Horn: When we do our substitution, we will lay that out. We are still looking to finalize how that is going to look moving forward.

Winnecour: Perhaps fees should be on reserve then until this is resolved.

Court: Do you have any idea on timeline here?

Mazur-Kraemar: It will be swift.

Baritfay: I am very new to this situation. I am confident that we can provide good representation for those clients moving forward.

Court: On the chapter 7s are you going to do the bifurcated fees?

Van Horn: They will all be on a flat fee retainer.

Court: Based on the representation that the Van Horn firm is committing to no longer file chapter 13 cases in this district, and if it commits to not filing chapter 7 cases after October 31, 2026, I will suspend my inquiries into these areas. Any fees disbursed to the Van Horn firm from the August distribution shall be refunded to the Debtors. All other fees in chapter 13 cases involving the Van Horn firm shall be held in reserve pending a determination of the substitution of counsel.

***OUTCOME:***

1. For the reasons stated on the record at the September 16, 2026 hearing, the *Chapter 13 Trustee's Objection to Debtor's Exemptions* [Dkt. No. 27] is **SUSTAINED**. [The proposed order at Dkt. No. 27 shall be entered]

2. Pending the filing of a substitution of counsel in this case and further Court order, any legal fees or expenses payable to the Van Horn Law Group shall be held by the chapter 13 trustee on reserve. [Text Order]

**DATED:** 9/16/2026